LILES, Judge.
Appellants bring this appeal from an order of the probate court construing the provisions of the will of Nicholas S. Pit-akos. The basic conflict is between appellant Charles M. Michel and the residuary legatees under the will. The will provision giving rise to this conflict reads as follows :
“ITEM THREE: I have previously made arrangements with my deceased wife’s Nephew, CHARLES M. MICHEL, 2449 Bushwik Drive, Dayton, Ohio, whereby he has agreed to look after my interests in the event of my disability. The arrangements were that should I, Nicholas S. Pitakos, for any reason, be unable to manage my own affairs, relating to my real estate or my other properties and monies; or relating to day to day care of my person, then Charles M. Michel was to *697 give me all assistance needed, and, if necessary, take over complete control and management of my finances and of my financial and personal needs. Charles M. Michel having undertaken to perform this responsibility in any event and no matter how much of his effort might be involved, I desire to show my appreciation as follows:
“I leave all of my tangible personal property to CHARLES M. MICHEL, 2449 Bushwik Drive, Dayton, Ohio, and, further leave Charles M. Michel, 25'% 04tfi) of the balance of my estate as hereinafter detailed.
“However, the entire gift to Charles M. Michel is conditioned on his looking after my interest, in the event of my disability to do so, as above set out and to the best of his ability. My Executor or alternate Executor, hereinafter designated, shall have sole and absolute discretion in determining whether the conditions have been met, as I have full confidence in their ability to investigate and make a just and correct decision should either of them be required so to do.”
Appellant Charles M. Michel contended that even though it never became necessary for him to manage any of decedent’s affairs prior to decedent’s death, he should take under the above-quoted portion of decedent’s will. Appellees urged before the probate judge that any gift Charles M. Michel might receive was conditioned upon him, in fact, performing as contemplated by the will. Since it was unnecessary for him to so perform for whatever reason, he was not entitled to anything under the will.
After considering the various petitions, cross-petitions and other pleadings the probate judge entered an order declaring that the purported bequest to Charles M. Michel was dependent upon the condition precedent that he perform the tasks set forth in the above-quoted portion of the will. Since he did not perform nor did it become necessary for him to so perform, he was not entitled to receive any portion of decedent’s estate.
A cursory examination of the quoted Item Three of the will reveals an almost irreconcilable ambiguity. In fact it could be described as a “classic textbook example” of ambiguity. Under the rules of construction the item is subject to at least two diametrically opposed interpretations and perhaps a fruitful mind could conceive of several other interpretations.
We have held in such situations involving ambiguous instruments that all evidence which tends to develop the intention of the parties should be before the court rather than having the case disposed of on the pleadings. In re Feldman’s Estate, 109 So.2d 407 (D.C.A.Fla.1959).
The case of Pancoast v. Pancoast, 97 So.2d 875 (D.C.A.Fla.1957), stated that the fundamental and controlling axiom is to ascertain and effectuate the intention of the testator and that in order to do this, the court should try to place itself in the armchair of the testator. In that opinion Judge Pleus said:
“ * * * To accomplish this it is proper to consider all circumstances surrounding the execution of the will, the condition, nature, and extent of the property devised, the testator’s relationship and attitudes toward the members of his family and to the beneficiaries of the will, their financial condition and in general the relationship between all the parties concerned. * * *
“ * * * For all practical purposes * * * the decree below was rendered on the pleadings themselves as if involved was solely a question of law that could be conclusively resolved by resort to and use of one or more of the various canons of construction. By so doing, essential sources of enlightenment as to the intent of the testatrix were not availed of and therefore the *698 doubts and uncertainties were only partially resolved.” 97 So.2d at 876, 877.
We feel that the case at bar is, as was the Pancoast case, one in which an inquiry into the facts is essential to clarify the application of the law. Only upon such an inquiry can either the probate court or this court be in a position to arrive at a correct result. The fact that neither of the parties here initially requested such an inquiry does not mean it is unnecessary. Such an inquiry would of necessity go beyond those persons named by the testator as executor or alternate executor and should be broad enough to better enable the court to arrive at the proper construction in accordance with the intent of the testator. In short, the probate judge should attempt to place himself in the armchair of the testator.
In view of the foregoing, this cause is reversed and remanded for further proceedings not inconsistent with this opinion.
SHANNON, Acting C. J., and HOB-SON, J., concur.